# SULLIVAN *v.* HUIDEKOPER.

### LANDOWNERS; DANGEROUS PREMISES; TRESPASSERS.

1. There is no duty upon the part of a real-estate owner, upon whose land is an open and unfenced pond, to keep his land safe for a trespasser, even when such trespasser is a boy ten years old.
2. The primary duty to guard and protect a child against patent and un- concealed dangers devolves upon the parent, and not upon the owner of land upon which the child is trespassing.

No. 1591. Submitted February 9, 1906. Decided March 6, 1906.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia in an action for negligently causing the death of plaintiff's intestate. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia, in a case brought by the appellant, as administratrix of Arthur J. Sullivan, deceased, against the appellee, Virginia C. Huidekoper, to recover damages for the alleged causing the death of the intestate of the appellant.

A demurrer was filed to the declaration, and, being sustained, the plaintiff has taken this appeal.

The facts as disclosed by the declaration and an amendment thereto are, in substance, these: Virginia C. Huidekoper is the owner of a parcel of land in block 146 of Burleith addition to West Washington, located at the intersection of Thirty-seventh and W streets, northwest, over which flowed two small streams of water; that said streets were so constructed that they acted as a dam to the water flowing over the land, causing a pond to be formed of a size about 250 feet long by 90 feet wide, with a depth varying from 6 to 10 feet, and its bottom being covered by a dangerous, muddy, and sticky mire 2 feet in thickness; that in the immediate vicinity of, and surrounding the land, were the residences of a large number of persons, including many young children of a tender age; that the pond was attractive to young children, many of whom were and had been for a number of years accustomed to play about and wade and swim in it; that no efforts were made to drain off the water, or to fill in the depression, or to fence in the pond; that all these facts were known to Mrs. Huidekoper; that the intestate was a child of tender years, incapable of exercising ordinary care and prudence, and that, being ignorant of the dangerous character of the pond, he went to the lot with other children on June 8, 1904, and fell or went into said pond and was drowned; and that the child left surviving him a father and mother, and a brother and sister. Damages in the sum of $10,000 were

claimed. The sole assignment of error is that the court erred in sustaining the demurrer of the appellee.

*Mr. A. E. L. Leckie, Mr. Creed M. Fulton,* and *Mr. Joseph W. Cox* for the appellant.

*Mr. Reginald S. Huidekoper* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

It is contended by appellant that the facts set out in the declaration call for the determination by a jury whether or not the appellee was guilty of negligence. As stated on behalf of appellant, the primary question here involves the duty of a landowner to a child, who is a trespasser upon his premises, whether there is any duty owed, and if so, as to its nature. The question presented, while interesting, is not a novel one, and the books are full of cases wherein, under varying phases, the courts have considered it. As is to be expected, there is a lack of uniformity in the decisions, but we apprehend that when the cases are considered in the light of the facts of each case the differences in the rulings of the various tribunals called upon to pass upon such questions are more seeming than real.

In the case at bar it appears that a landowner knowingly permitted a pond about 250 feet long, 90 feet wide, and from 6 to 10 feet deep to remain upon her land, which is situated at the intersection of two streets in or near a suburb which is an extension of the city of Washington, District of Columbia. So far, at least, as this case is concerned, we deem it immaterial whether the pond be a natural or an artificial one. It was of such size, and children were so accustomed to play about it and wade and swim in it, that the element of an unknown, concealed, or hidden danger is also absent. Its existence and its use by children, according to the declaration, was notorious, and must necessarily have been known to those living in the neighborhood,—to the parents as well as to the children. The declaration does not state the age of the child, but it was conceded at the hearing, and ap-

pears by the opinion of the court below, that he was about ten years old. Neither is it averred that the child while walking along the highway fell into the pond; so the question of the liability of the appellee had the child lost his life while lawfully upon the street which immediately bordered upon the pond also is not before us. The facts of the case render inapplicable many of the authorities relied upon by appellant to sustain the proposition that the duty of a property owner to a child trespasser extends so far as to make him liable for maintaining upon his land an unfenced or unguarded pond in or near the extension to a city, the existence of which is apparent and well known.

It is strenuously insisted that the facts in this case bring it within the doctrine laid down in *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657, 21 L. ed. 745; and *Union P. R. Co.* v. *McDonald,* 152 U. S. 262, 38 L. ed. 434, 14 Sup. Ct. Rep. 619. If the contention is correct, it will end the controversy so far as the present appeal is concerned, for we recognize the binding force of these cases, and, of course, could do nothing but follow them. If, however, it should require an extension of the principle laid down in those cases to make liable the appellee, we should hesitate to so rule.

The first of the two cases is the one commonly known and referred to as the *"Turntable Case."* It has been repeatedly commented upon by the courts of various States, and, while quite generally recognized, there has been a disinclination to extend the principle laid down to cover cases where the facts are quite different. In hereafter referring to prior adjudications of other courts, with the reasoning and conclusion of which we may agree, we shall limit our review of cases to those decided by the courts in States recognizing the rule laid down in the two cases above referred to.

In *Sioux City & P. R. Co.* v. *Stout, supra,* it will be recalled that the child was injured by his foot being caught between the fixed rail of the roadbed and the turning rail of the table, while playing with other boys. The boys were turning the table, which could have been prevented by locking the turntable when not in

use by the company. This could have been done by repairing a broken latch, which would not have involved any considerable expense or inconvenience. The court, finding that the turntable was a dangerous machine, held that the defendant railroad was liable for the injuries to the child, although he was a trespasser, because by reasonable care the danger could have been obviated. This case is not analogous to that, nor, in our opinion, do the facts bring it within the principle there laid down.

In *Union P. R. Co.* v. *McDonald, supra,* the company had failed to fence in a slack pit kept upon its land, and a boy was burned by falling on and into it. The slack, on its surface, presented no sign of danger. It also appears that a statute required the company to put a fence around its slack pit. Under the circumstances of the case, which it is unnecessary for us to set out, the court held that the boy was not a trespasser, and had not been guilty of contributory negligence. Putting aside the requirement of the statute and the finding that the boy was not a trespasser, we do not think that the case, nor any case referred to in the opinion, is controlling as to this case, where the facts are so different. We are not dealing with a case where the injury is caused by negligence in properly guarding dangerous machinery, or by a concealed, dangerous condition the existence of which was not and could not well be known by the child. We find no decision of the Supreme Court of the United States where the facts are the same, or, in our opinion, sufficiently analogous to those in the case at bar, to aid us to arrive at a correct conclusion herein. We therefore turn to the decisions of the Federal and State courts, and find many cases where the facts are, in controlling features, substantially the same as those in the case under consideration. While there is a lack of uniformity, as might be expected, the great weight of authority is clearly that the landowner is not liable for accidents occurring under a state of facts such as here shown.

In *Pekin* v. *McMahon,* 154 Ill. 141, 27 L. R. A. 206, 45 Am. St. Rep. 114, 39 N. E. 484, the court held the city of Pekin liable in damages for the death of a boy, who was drowned in a pond or pool on a vacant lot owned by the city. Also, in *Price*

*v. Atchison Water Co.* 58 Kan. 551, 62 Am. St. Rep. 625, 50 Pac. 450, the defendant company was held liable for the death of a boy who, without negligence on his part, fell in and was drowned. The company maintained upon its grounds deep reservoirs of water, in which boys, with its knowledge and consent, were accustomed to fish, no reasonable precautions being taken to prevent accidents.

Appellant also cites the case of *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 60 Ark. 545, 46 Am. St. Rep. 216, 31 S. W. 154, where a boy was drowned by walking into a pool of water. This case, in view of the facts disclosed, is not an authority to sustain the broad proposition here contended for. The pool of hot water was covered with pieces of bark, and could not be seen. In *Kinchlow* v. *Midland Elevator Co.* 57 Kan. 374, 46 Pac. 703, the boy was injured by falling into a barrel of hot water, the top of which was level with the surface, the covering being loose.

But the reasoning in these cases does not commend itself to our approval. The danger of children who go to swim in ponds and other bodies of water is remote, and accidents are comparatively of rare occurrence. To hold an owner of real estate, upon which there is a body of water, liable for the accidents that may happen to children while trespassing thereon, would be to place upon them an unfair burden. The danger is one that cannot be guarded against without considerable expense or inconvenience.

The cases holding that there is no duty upon the part of a real-estate owner, upon whose land is a pond or other body of water, to keep his land safe for trespassers, even when those trespassers are children, seem to us to be founded upon and supported by reason and common sense. The primary duty to guard and protect a child against patent and unconcealed dangers devolves upon the parent, and not upon a stranger. These cases, while approving the so-called "turntable" doctrine, distinguish between attractive and dangerous machinery and ponds and other bodies of water attractive to children and not free from danger.

In *McCabe* v. *American Woolen Co.* 124 Fed. 283, Affirmed

in 65 C. C. A. 59, 132 Fed. 1006, the court sustained a demurrer, and held the declaration insufficient, where it appeared that the defendant maintained an unguarded mill trench, having precipitous banks, near the house of the father of the child, who fell in and was drowned. The court, while recognizing the *Stout* and *McDonald Cases,* said: "The case at bar, however, is essentially distinct in this particular. This canal was permanent, open, and plain to view,—as much so as though it had been a natural stream,—and suggests nothing whatever which would change the relations of the parties from what they would have been had it been a brook or a river. If the defendant is to be holden to this plaintiff for not especially guarding it, then the customs of the community must be changed throughout, because it is impossible to distinguish this canal, for the purpose of this case, from a river or a brook, a haymow, an ox cart left in a farmer's yard, a high ledge, or a field trench, about either of which children may happen to be accustomed to play. We think, therefore, that this canal was an object of such a character that, both from the reason of the thing and the customs of the community, the defendant was entitled to assume that the plaintiff's natural guardians would protect him from any dangers attached thereto, as they easily could and ought to have done. Therefore, on account of the various distinctions which we have pointed out, and the reasons which we have stated, this suit cannot be maintained."

*Peters* v. *Bowman,* 115 Cal. 345, 56 Am. St. Rep. 106, 47 Pac. 113, 598, was a case where it appeared that the defendant permitted a pond to remain on his premises unguarded and unfenced. Children played upon it, and one of them, a boy of eleven, while floating on a raft, fell off and was drowned. The court also recognized and approved the "turntable" cases, but said: "A body of water, either standing as in ponds or lakes, or running as in rivers and creeks, or ebbing and flowing as on the shores of seas and bays, is a natural object incident to all countries which are not deserts. Such a body of water may be found in, or close to, nearly every city or town in the land; the danger of drowning in it is an apparent, open danger, the knowl-

edge of which is common to all; and there is no just view consistent with recognized rights of property owners which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with impenetrable wall."

On a petition for a rehearing, it was said: "A turntable is not only a danger specially created by the act of the owner but it is a danger of a different kind to those which exist in the order of nature. *A pond, although artificially created, is in nowise different from those natural ponds and streams which exist everywhere, and which involve the same dangers and present the same appearance and the same attractions to children.* * * * A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot * * * would answer the purpose; and, therefore, to make it safe, it must either be filled or drained. * * * But ponds are always useful, and often necessary. * * * Are we to hold that every owner of a pond or reservoir is liable in damages for any child that comes uninvited upon his premises and happens to fall in the water and drown? If so, then, upon the same principle, must the owner of a fruit tree be held liable for the death or injury of a child who, attracted by the fruit, climbs into the branches and falls out. But this, we imagine, is an absurdity, for which no one would contend; and it proves that the rule of the turntable cases does not rest upon a principle so broad and of such rigid application as counsel supposes. The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions."

To the same effect is the ruling in *Stendal* v. *Boyd,* 73 Minn. 53, 42 L. R. A. 288, 72 Am. St. Rep. 597, 75 N. W. 735, where the court said: "It is sought, however, to hold the defendant

liable upon the facts stated, upon the principle of the 'turntable cases.' * * * The doctrine of the turntable cases is an exception to the rule of nonliability of a landowner for accidents from visible causes to trespassers on his premises. If the exception is to be extended to this case, then the rule of nonliability as to trespassers must be abrogated as to children, and every owner of property must, at his peril, make his premises child proof. If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to it, he must, on the same principle, guard a natural pond; and, if the latter, why not a brook or creek, for all water is equally alluring to children? If he must fence in his stone quarry after it fills with water, so that children cannot reach it,—a well-nigh impossible task,—why should he not be required to do it before, for a stone quarry, with its steep and irregular sides, might well be an attractive and dangerous place to children? It would seem that there is no middle ground, and that the doctrine of the turntable cases ought to be limited to cases of attractive and dangerous machinery. * * * We are of the opinion that the doctrine of the turntable cases ought not to be applied to this case. * * * With the exception of *Pekin* v. *McMahon,* the courts of last resort, including those which recognize the doctrine of the turntable cases, have uniformly denied the liability of a landowner for injuries to trespassing children by reason of open and unguarded ponds and excavations upon his premises."

In *Klix* v. *Nieman,* 68 Wis. 271, 60 Am. Rep. 854, 32 N. W. 223, the court sustained a demurrer to the declaration, holding that the owner of a vacant lot in a city is under no obligation to fence in a pond on such lot in which surface water collects, and is not liable for the death of a child falling into it while at play on the lot. It was there said: "If the defendant was bound to so fence or guard the pond, upon what principle or ground does this obligation rest? There can be no liability unless it was his duty to fence the pond. It surely is not the duty of an owner to guard or fence every dangerous hole, or pond, or stream of water, on his premises for the protection of persons going upon

his land who had no right to go there. No such rule of law is laid down in the books, and it would be most unreasonable to so hold."

In *Moran* v. *Pullman Palace Car. Co.* 134 Mo. 641, 33 L. R. A. 755, 56 Am. St. Rep. 543, 36 S. W. 659, which was a "pond" case, the same doctrine was enunciated. The court said: "The gravamen of plaintiffs' action, in substance, is, that the pond was attractive to children, who were accustomed to bathe therein; that it was a dangerous place by reason of the deep hole therein; that defendant knew, or might have known, of the danger of the place to children, and that they were in the habit of bathing in the pond; that defendants negligently permitted the pond to be frequented by children, to remain unguarded and unfenced, neglected to fill said excavation and to fence the same, *as required by divers ordinances* which were pleaded, and such failure resulted in the death of plaintiffs' son, who, entering the pond where it seemed to be shallow, fell over into the deep portion and was drowned."

In a later case (*Arnold* v. *St. Louis,* 152 Mo. 183, 48 L. R. A. 291, 75 Am. St. Rep. 447, 53 S. W. 900) demurrers to a petition were held properly sustained where the facts disclosed that plaintiff's intestates were drowned by falling through the ice. It was alleged that the pond was unguarded and unfenced, was near a public school, and was attractive to children, who were in the habit of skating on the pond, which fact was known to the defendants.

Without citing other authorities, we are persuaded that the conclusions in the cases cited and the reasoning upon which they are based are correct, and that in a case such as the one at bar it would be unjust to hold the landowner liable for the death of, or injury to, a child of ten years of age. We do not consider that the appellee was negligent in not taking steps to prevent the trespassing upon her land by boys of such age as plaintiff's intestate. To hold landowners responsible under such circumstances would be to impose upon them an oppressive burden, and shift the care of children from their parents to strangers. Every man who has been brought up with the freedom al-

lowed to American boys knows that you might as well try to dam the Nile with bulrushes as to keep boys away from ponds, pools, and other bodies of water. As is well said in *Gillespie* v. *McGowan,* 100 Pa. 144, 45 Am. Rep. 365: "Vacant brickyards and open lots exist on all sides of the city. There are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured. To compel the owners of such property either to inclose it or fill up their ponds and level the surface, so that trespassers may not be injured, would be an oppressive rule. The law does not require us to enforce any such principle, even where the trespassers are children. We all know that boys of eight years of age indulge in athletic sports. They fish, shoot, swim, and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of an owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches."

We do not think that the Supreme Court intended that the rule laid down in the "turntable" and "slack pit" cases should be extended to embrace cases such as is the present one. We do not think that appellee owed any such duty in the premises to plaintiff's intestate as is claimed. Nor do we think that she omitted to do anything which a reasonably prudent person would have done.

In arriving at our conclusion we have not overlooked the various District ordinances, police and health regulations, referred to in appellant's brief. We do not think that these extend the duty or obligations owed by the lot owner to a trespassing boy. It appears that the District of Columbia was made a defendant, but the only judgment appealed from is that in favor of the defendant Huidekoper.

We think that the judgment appealed from should be affirmed, with costs. And it is so ordered.        *Affirmed.*