**Mrs. Mary E. HANKINS, Administratrix of the Estate of Thomas A. Hankins, deceased, Plaintiff,**

v.

**SOUTHERN FOUNDATION CORP., and Intercounty Construction Corporation et al., Defendants.**

**Civ. A. No. 1464–59.**

United States District Court
District of Columbia.

April 2, 1963.

---

4. Transcript of Testimony before Referee, October 17, 1961, p. 41.

Samuel Intrater, Washington, D. C., for plaintiff.

Hogan & Hartson, Frank F. Roberson, George V. Carneal, Jr., Washington, D. C., for defendants Southern Foundation Corp., Intercounty Const. Corp. and Morauer & Hartzell, Inc.

Chester H. Gray, Corp. Counsel, John A. Earnest and William R. Kearney, Asst. Corp. Counsel, for defendant District of Columbia.

YOUNGDAHL, District Judge.

The plaintiff, administratrix of the estate of Thomas Hankins, a boy who was eleven years old when he died, recovered a jury verdict in an action for damages arising out of the death of the decedent caused by the alleged negligence of the defendants, three contractors and the District of Columbia. The defendants have moved for a judgment notwithstanding the verdict, for a reduction of the verdict, and in the alternative for a new trial.

I

The motion for judgment notwithstanding the verdict is based upon two grounds: first, that the defendants as a matter of law cannot be held liable for failure to exercise reasonable care toward a child of eleven who trespassed on an area under construction and drowned in a deep ditch when the ice on top of this ditch gave way; and second, that the decedent, under these circumstances, was guilty of contributory negligence or assumption of risk as a matter of law.[1]

---

1. The defendant District of Columbia has moved for judgment n. o. v. upon the additional ground that there was no substantial evidence which would justify sending the case to the jury as against the District of Columbia. The primary contract, with the District of Columbia, under which the private contractors and subcontractors were obligated to perform the construction involved in the present case, gave to the District of Columbia full rights of inspection and control. In addition, counsel conceded that the city actually had inspectors on the site at various times. Therefore the Court believes there was sufficient evidence for the case to go to the jury as against the District of Columbia, and the District's motion for judgment n. o. v. on this ground will therefore be denied.

For both these propositions, the defendants rely upon the early case of Sullivan v. Huidekoper, 27 App.D.C. 154, 5 L.R.A.,N.S., 263 (1906), where the Court of Appeals affirmed a demurrer to a complaint alleging, in effect, that for many years children from surrounding homes had been attracted to a large pond (250 feet long, 90 feet wide, and from 6 to 10 feet deep) which had been artificially created on defendant's land by the construction of two intersecting streets, and that the defendant had made no effort to drain, fill in, or fence the pond. The court stated that the pond "was of such size, and children were so accustomed to play about it and wade and swim in it, that the element of an unknown, concealed, or hidden danger is also absent," 27 App.D.C. at 156, and that there was no "concealed, dangerous condition the existence of which was not and could not well be known by the child." Id. at 158. The court declared that cases "holding that there is no duty upon the part of a real-estate owner, upon whose land is a pond or other body of water, to keep his land safe for trespassers" was founded upon reason and common sense, and that the "primary duty to guard and protect a child against patent and unconcealed dangers devolves upon the parent, and not upon a stranger." Id. at 159. The court therefore held that the landowner was not liable, since "[t]o hold landowners responsible under such circumstances would be to impose upon them an oppressive burden, and shift the care of children from their parents to strangers." Id. at 163.

This Court does not believe that Sullivan v. Huidekoper, supra, is applicable to the facts in the present case, since the water involved in the present case was not a "pond" or "body of water" of the kind the court in Sullivan had before it, and since, unlike Sullivan, there is evidence in the present case of a concealed danger.

In the present case, the evidence showed that the various contractors were engaged in construction work pursuant to contracts and subcontracts with the District of Columbia, in connection with the construction of the Anacostia Freeway on the southeasterly side of the Anacostia River in the District of Columbia, between Pennsylvania Avenue and the river. These particular defendant contractors were engaged in moving a sewer line in connection with said highway construction, and in pursuance of this work had excavated a deep ditch with steep sides. Photographs introduced into evidence showed that the ditch appeared to be a few yards wide and about 20 or 25 yards long. There were six or seven other such deep ditches in the whole construction area, as well as numerous smaller ones and many mounds of dirt. Water had collected in all of these ditches, and as of the date of the accident, December 27, 1958, ice had formed over the water. There was testimony that the over-all area under construction was large enough to contain "many football fields." Numerous children (up to 50 or 60 on one occasion) came in the afternoons and on week ends in the months and weeks immediately before the accident to play upon the mounds of dirt and to slide upon the patches of ice. The decedent drowned in one of the deep ditches when the ice on top broke; he and two young playmates had come to this deep ditch after having slid safely on ice covering several shallow ditches.

Clearly, these patches of water and ice were not the sort of "ponds" or "bodies of water" the dangers of which children must, as a matter of law, be held to appreciate—especially because the existence in close proximity of mounds of dirt and the two sorts of ditches, some shallow and safe, and the others deep and hazardous, created just the kind of concealed danger which children might not appreciate. Sullivan v. Huidekoper, supra, is therefore not applicable to the facts in the present case, and has no bearing upon the correctness of the Court's decision to submit the case to the jury under the so-called "attractive nuisance" doctrine.

The Court submitted the case to the jury under the "attractive nuisance" doctrine because of two cases which are

much more recent than the Sullivan case: Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1934), and Eastburn v. Levin, 72 App.D.C. 190, 113 F.2d 176 (1940).

The Best case held that there were sufficient facts to go to the jury where it was alleged that children were attracted to a wharf on which were piles of sand, that the wharf was unfenced and close to the public road, that the piles of sand concealed holes in the wharf, and that the child drowned after falling through one of these concealed holes. The court held that "[t]he question is one of negligence —whether particular circumstances gave rise to a duty which had not been performed." 291 U.S. at 419, 54 S.Ct. at 490. Where trespassing children are concerned, the court said that such duty "must find its source in special circumstances in which, by reason of the inducement and of the fact that visits of children to the place would naturally be anticipated, and because of the character of the danger to which they would unwittingly be exposed, reasonable prudence would require that precautions be taken for their protection." 291 U.S. at 419, 54 S.Ct. at 490. The court in Best concluded that a jury should therefore have considered the case.

Eastburn v. Levin, supra, held that whether these "special circumstances" exist is a question for the jury. In that case it was alleged that children were attracted to a junk yard bordering on a city street, that the employees of the junk yard constantly let children use it as a playground, and that a child was injured when an old car on which he was climbing tilted and threw him against broken glass. The court held:

> "The jury should have been permitted to decide whether the special circumstances on which the Court relied in the Best case—attraction, danger not apparent to children, and likelihood of visits of children—were

present here, and if so, whether defendant took reasonable precautions for the protection of children." 72 App.D.C. at 191, 113 F.2d at 177.

The court added that the rationale for permitting a jury to impose liability based upon these special circumstances was derived from a basic choice:

> "The underlying question is whether it is better to let occupants arrange their premises in total disregard of neighboring children, or to require them to take such precautions as a normal person would when their premises are attractive and insidiously dangerous to children too young to look out for themselves and when the intrusion of such children is likely. On the one side is the occupant's interest, and the general interest, in the profitable use of land. On the other is the child's interest, and the interest of his parents and of society, in life and limb and in compensation for their injury. Imposing responsibility is more apt to make occupants careful than denying responsibility is to make children careful; occupants may know little about law, but children know nothing about it, and children will play where they can." 72 App.D.C. at 192, 113 F.2d at 178.

■ Because of the above language from the Best and Eastburn cases, this Court concluded that the facts of the present case raised a jury question,[2] since a reasonable jury could conclude that the piles of dirt and the ice constituted a special attraction, that the combination of deep ditches and shallow ditches constituted a special danger, that the number of children using the construction area as a playground meant that the defendants should have anticipated that visits of children to the area were likely, and that the absence of any warning signs, fences, or guards of any kind meant that the defendants had failed to take reason-

2. The defendant has cited a recent Indiana case, Harness v. Churchmembers Life Ins. Co., 175 N.E.2d 132 (Ind.1961), which is

so out of harmony with the Best and Eastburn cases as not to be persuasive in this jurisdiction.

able precautions for the protection of children. Such conclusions of the jury were not *required* by the evidence; but they were certainly amply *supported* by the evidence.

■ The defendants also argue that the decedent must be held to have been contributorily negligent or to have assumed the risk, both as a matter of law. To the extent that this argument is merely another way of stating that the defendants were under no duty toward a trespassing child in the circumstances revealed by the evidence, this argument has already been considered—and rejected—above. To the exent that the argument claims that the decedent himself was contributorily negligent or assumed the risk, the issues were for the jury to decide. It is true that there were facts from which a reasonable jury might have concluded that the decedent was contributorily negligent—since he disobeyed his mother's instructions not to cross Pennsylvania Avenue or to go into the construction area, and since he tested the ice that was to give way only by throwing some small rocks onto it. It is also true that there were facts from which a reasonable jury might have concluded that the decedent assumed the risk—since one of his playmates warned him specifically that he better not go onto the ice covering the deeper ditch, because he might fall through, and since he "bet" his other playmate that he could get across the ice. But such conclusions on the part of the jury were not required, since a reasonable jury could also have concluded—as this jury apparently did—that the maturity and capacity of the child were not sufficient to justify a finding that he was guilty of contributory negligence or that he assumed the risk in these circumstances.

## II

■ Defendants have also moved for a reduction of the verdict under 16 D.C. Code § 1201, which applies specifically to wrongful death cases.[3] While the Court believes that more evidence as to the financial status of the parents and as to the cost of bringing up the child could and should have been introduced into evidence, there was evidence that the parents lived in a rooming house at the time of the accident, that the father was a plumber, and that there was one other minor child in the family. There was also evidence that the funeral expenses were $460.76. In view of this evidence, and the modest verdict of $8,000 which the jury returned, the Court does not feel justified in ordering a reduction of the verdict, since any estimate of "pecuniary loss" in cases involving the wrongful death of a minor is highly speculative in any event. See Rankin v. Shayne Bros., Inc., 98 U.S.App.D.C. 214, 234 F.2d 35 (1956); Hord v. Nat'l Homeopathic Hosp., 102 F.Supp. 792 (D.D.C.1952), aff'd, 92 U.S.App.D.C. 204, 204 F.2d 397 (1953).

## III

Defendants have also moved for a new trial. Since the Court believes, for the reasons set forth in section I above, that the verdict was in accord with the weight of the evidence; and since the Court also believes, for the reasons set forth in section II above, that the verdict was not excessive—neither of these grounds for this motion need be considered again.

■ The only additional ground for this motion is that the Court failed to give certain requested instructions, including the following section of Comment from the Restatement of Torts (Second), § 339 (Tent. Draft No. 5, approved 1960):

> "There are many dangers, such as those of fire and water, or of falling from a height or into an excavation, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed to

---

3. " \* \* \* if in a particular case the verdict is deemed excessive the trial justice or the United States Court of Appeals for the District of Columbia, on appeal of the cause, may order a reduction of the verdict \* \* \*." 16 D.C.Code § 1201.

[sic] large. To such conditions the rule stated in this section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it."

The Court believes that to have given this section of the Restatement would have been argumentative and was unnecessary. The law discussed in this Comment was fully covered in the Court's charge by the use of the language of "special circumstances" quoted above from the Best case, and the language of "insidious danger" quoted above from the Eastburn case. In addition, the Court did instruct the jury on the latest reformulation of the "attractive nuisance" doctrine itself (although not the Comment thereto) as contained in Tentative Draft No. 5 of the Restatement of Torts (Second), § 339 (approved 1960). See Proceedings, American Law Institute, 240–44 (1960). This Restatement formulation [4] gave one factor which was not clearly set forth in the Best and Eastburn cases and which may well have benefitted the defendant: "The utility of the condition and the burden of eliminating the danger are slight as compared with the risk to children involved \* \* \*." The defendant also received the benefit of the Court's statement to the jury that in deciding whether the plaintiff had proved each of the elements of the "attractive nuisance" doctrine by a fair preponderance of the evidence, the jury could consider:

"the nature of the area, its size, its proximity to public roadways, the nature of the risks to children, the kinds of precautions which might reasonably have been taken under the circumstances as the defendant knew or had reason to know them to be, any warnings given to the child by his parents or other children, *the natural parental responsibility to take reasonable steps to guard the child against dangers which the parent knew or should have known might cause serious injury or death,* and any other factors which you deem important in deciding whether the defendants did something which a reasonably prudent person would not do, or failed to do something which a reasonably prudent person would do, under the circumstances as shown by the sworn testimony in this case."

The Court believes that the charge as a whole thus fully covered the law in a way which gave both parties every benefit to which they were entitled.

The motions for judgment notwithstanding the verdict, for a reduction of the verdict, and for a new trial will therefore be denied.

4. "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land, if:
"1. The place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"2. The condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"3. The children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"4. The utility of the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"5. The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."