**EASTBURN v. LEVIN.**

**No. 7459.**

United States Court of Appeals for the District of Columbia.

Decided May 13, 1940.

Max Miller and Albert Brick, both of Washington, D. C., for appellant.

I. Irwin Bolotin, Nathan M. Brown, and Samuel B. Brown, all of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

Appellant, a boy eight years old, sued for injuries received in defendant's junk yard. This appeal is from a judgment for the defendant based on a directed verdict.

Defendant's yard bordered on a Washington street, and was opposite plaintiff's house. Piles of junk, including discarded automobiles, were visible from plaintiff's house and from the street. Usually boards were missing from the fence around the yard. On the day of the accident plaintiff and other boys entered the yard from the street, at a place where boards were missing, to play and to get automobile cloth for a hut. Plaintiff played and looked for cloth for half an hour, and then saw torn cloth on a car which lay on its side on top of gasoline tanks, 20 to 25 feet from where he entered the yard. He climbed on this car, and was ripping off the cloth when the car tilted and threw him against broken glass. He testified that defendant's employees had let him tear off top cloth on other occasions, and burn it or carry it away. He also testified that he did not know it was dangerous to climb on the car. He had noticed the car when he had been in the yard before, but he could not see it "until he was starting into the yard."

Plaintiff and other children had frequently used the yard as a playground. A child had been injured there the previous year, and there was testimony that children frequently left the place cut and bleeding. There was much testimony that defendant's employees constantly tolerated the presence of children. On the other hand, defendant testified that he had told his men never to permit children to enter the yard. His watchman confirmed this,

and said he had twice chased plaintiff and other boys out of the yard on the morning of the accident. The watchman also testified that he was responsible for repairing the fence and had several times replaced boards. Defendant's manager testified that he chased children whenever he saw them attempting to enter. Plaintiff's parents had repeatedly punished him for going to the yard, but as his mother put it "the attraction there seemed too great for him to resist."

In the leading case of Sioux City & P. Railroad Co. v. Stout,[1] a six-year old boy was allowed to recover for injury caused by playing with an unfenced and unguarded turntable on the railroad's land near a small village. The plaintiff had never gone there before, but one of his companions had played there when railroad men were near. One railroad man testified that he had seen boys playing there and had forbidden them to do so. The Court approved a charge that the jury should find for the plaintiff if "the turntable, in the condition, situation, and place where it then was, was a dangerous machine, one which, if unguarded or unlocked, would be likely to cause injury to children," and if the jury thought there was negligence in leaving it unlocked or unguarded.[2] In Best, Administrator v. District of Columbia,[3] a child of five fell through one of several holes in defendant's wharf and was drowned. The wharf was close to the street and unfenced. The Supreme Court held that it was erroneous to direct a verdict for the defendant when it appeared that children were in the habit of playing on the wharf and when it might have been inferred that the wharf could be seen and readily entered from the public space; that there were attractive sand piles on it; and that danger was manifest to adults but not to children. The Court said that the defendant's duty of care "must find its source in special circumstances in which, by reason of the inducement and of the fact that visits of children to the place would naturally be anticipated, and because of the character of the danger to which they would unwittingly be exposed, reasonable prudence would require that precautions be taken for their protection."[4]

 We think these cases require us to reverse the present judgment. The jury should have been permitted to decide whether the special circumstances on which the Court relied in the Best case—attraction, danger not apparent to children, and likelihood of visits of children—were present here, and if so, whether defendant took reasonable precautions for the protection of children. In view of the frequent presence of children, the evidence as to the way in which the junk was piled, fenced, and guarded would have supported a finding of negligence. That defendant's employees were instructed to and sometimes did eject children, if true, is not conclusive of due care.

In United Zinc Co. v. Britt,[5] which reversed a judgment for the plaintiff, his children were fatally injured by going into a poisonous pool. "The Court stressed the facts that it was 'at least doubtful whether the water could be seen from any place where the children lawfully were,' that there was 'no evidence that it was what led them to enter the land,' and that it did not appear 'that children were in the habit of going to the place.' The decision did not overrule Railroad Co. v. Stout * * *."[6] In Branan v. Wimsatt,[7] a child was injured by the fall of a lumber pile on which she was playing. This court sustained a directed verdict for the defendant, largely because the child was 12½ years old and fully conscious of the danger.

 Appellee urges that appellant was not attracted, in the sense of the rule, by the car which injured him, because he could not see it from the street. But the Best case shows that the visible attraction need not be the immediate cause of injury. There the attraction was the sand piles; the cause of injury was a hole in the wharf. It was not suggested that the holes were visible from the street, or that they had anything to do with the child's going to the wharf. Even if a substan-

---

[1] 17 Wall. 657, 84 U.S. 657, 21 L.Ed. 745.

[2] 17 Wall. 659, 21 L.Ed. 745.

[3] 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882.

[4] 291 U.S. 419, 54 S.Ct. 491, 78 L.Ed. 882.

[5] 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28.

[6] Best, Administrator v. District of Columbia, 291 U.S. 411, 417, 54 S.Ct. 487, 490, 78 L.Ed. 882.

[7] 54 App.D.C. 374, 298 F. 833, 36 A.L. R. 14, certiorari denied, 265 U.S. 591, 44 S.Ct. 639, 68 L.Ed. 1195.

tial identity between visible attraction and source of injury were required, appellant's evidence would meet the requirement. Junked cars attracted him and a junked car injured him. He cannot be required to show that he was injured by the same specimen, as well as the same species, which lured him to the premises.

Appellee would have us bar appellant on the ground that his sole purpose in going to the yard was to appropriate appellee's property. But if appellant's testimony is true, he and his companions had two purposes, "to play and to get some automobile top cloth for their hut." He played for half an hour before he touched the cloth. Moreover, it does not appear that he intended to take a thing of value. His testimony shows that he thought, reasonably and perhaps correctly, that torn top cloth was worthless and he was welcome to it. We need not consider whether an intention to appropriate a thing of value would have barred his suit.

The underlying question is whether it is better to let occupants arrange their premises in total disregard of neighboring children, or to require them to take such precautions as a normal person would when their premises are attractive and insidiously dangerous to children too young to look out for themselves and when the intrusion of such children is likely. On the one side is the occupant's interest, and the general interest, in the profitable use of land. On the other is the child's interest, and the interest of his parents and of society, in life and limb and in compensation for their injury. Imposing responsibility is more apt to make occupants careful than denying responsibility is to make children careful; occupants may know little about law, but children know nothing about it, and children will play where they can. And the liability in question is less exceptional than is sometimes supposed. Rather, the immunity of occupants of land, so far as immunity persists, from responsibility for unreasonably dangerous conditions is one of the exceptions to the growing and healthy tendency of the law to require all social conduct to conform to social standards.

Reversed.