47 N.J. Super. 509 (1957)
136 A.2d 301
WILLIAM ARTHUR SIMMEL, AN INFANT BY WILLIAM HERMAN SIMMEL, HIS GUARDIAN AD LITEM, AND WILLIAM HERMAN SIMMEL, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY COOP COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1957.
Decided November 21, 1957.
*511 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Jesse Moskowitz argued the cause for plaintiffs-respondents.
*512 Mr. Edward V. Ryan argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendant appeals from a judgment of the Hudson County Court entered in favor of the infant plaintiff in the sum of $20,000 and in favor of his father in the sum of $7,500. The action was brought by the plaintiffs as a result of severe burns received by the infant from an open fire on certain vacant lots belonging to defendant, on which the infant was trespassing.
Twenty-one days before the accident, defendant acquired title to a number of lots, all fronting on one street and within the bounds of one block in Hoboken, including not only the vacant lots referred to, which were not fenced in, but also others which were fenced in, containing a building. The vacant lots were located just across the street from a large housing project containing over 700 families, including plaintiffs and perhaps 1,000 children, and the children were "always," "all the time," on them. 2 Harper and James, Torts, 1451 (1956).
There was testimony that various vehicles, including refuse trucks of the Department of Public Works of Hoboken, dumped rubbish and junk on the vacant lots both before the acquisition of title and thereafter, at least to the date of the accident. There was testimony, too, that practically every day this rubbish was set on fire by the men driving the trucks or sometimes by children, and that the fires were then left to burn and smolder, with no one to tend them. As a result of one fire  not a large fire  in which wood and rubbish were burning, including apparently an old bed and mattress, the infant plaintiff, then four years of age, sustained his injuries.
Defendant denied knowledge of the fires and of the dumping on those lots. However the jury could have found from the testimony that one of defendant's officers saw the property a few months before the acquisition of title. In fact, its then place of business was only ten blocks away. At some *513 time prior to the accident, defendant started to move its business from there to the new location, but had not finished doing so when the boy was hurt. Indeed, the business was not actually in operation at the new site until 13 days thereafter.
Defendant's first point is that no landowner should be charged with liability to trespassing children because of fires on his land, unless by his own act he authorized the fires or permitted their continuance. The point was raised at the trial on defendant's motions for the dismissal of the case and thereafter on its motion for a new trial. Defendant also relies on the court's charge to the jury, but its objection to the charge was so vague as not to have brought to the court's attention either this matter or any question as to the language used there.
The jurisprudence of the past gave to the occupier of land a special privilege to be careless. But today the broad tendency of the law is to impose upon him, as upon other members of society, a duty to exercise reasonable care to avoid injury to others. Taylor v. New Jersey Highway Authority, 22 N.J. 454, 463 (1956); Harper and James, supra, 1440. This tendency to subject him to that duty, with all the elasticity inherent therein, wars not only against the severe traditional views governing an occupier's liability to trespassers and licensees, but also against the somewhat mollified, yet rather particularized, set of rules of the Restatement of Torts, §§ 329-342, which would limit his liability to certain specified cases. However, it is not to be forgotten that this branch of the law is in the process of development, and that a number of questions involved in that development have thus far not been answered.
One such question is presented here. Traditionally the courts have been reluctant to put an occupier of land under any duty to trespassers with respect to a natural condition thereon. However, they have been somewhat less reluctant in connection with an artificial condition of his own creation, even though at the time of the accident it had become static  and still less so with respect to an activity of his actually *514 in process while the trespassing takes place. But it cannot but be noticed, looking at the matter from an a priori standpoint, that natural conditions shade into dormant artificial conditions created by him in the past; and, see Mistretta v. Alessi, 45 N.J. Super. 176, 181, 182 (App. Div. 1957), the latter in their turn shade into his current activities. Where, as here, the activity is of third persons, neither caused by the occupier nor for his benefit, it would seem to lie nearer in this contrived spectrum to a natural condition than to a past or present activity of his.
In this connection defendant relies heavily on Gallagher v. Frederick, 366 Pa. 450, 77 A.2d 427 (Sup. Ct. 1951), also a case where an infant was burned by fires on a vacant lot. That case apparently attempts to press on to a still finer distinction between a land owner's activity and his inactivity, namely, between "a condition * * * which the owner allows to exist" on his premises and the condition involved in that case, namely, of fires occurring "daily," which he tolerates. For the purposes of our decision here, we pass over the cases holding that upon proof of continued toleration a jury question arises as to whether there has been an implied permission. Imre v. Riegel Paper Corp., 24 N.J. 438, 446 (1957); Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 45 (1952); cf. Restatement, Torts, § 330, comment b; Prosser, Torts (2d ed.), 438, at n. 15, citing Pennsylvania cases. For we think that under the law of New Jersey the land occupier may be held liable for injuries to trespassing children resulting from an artificial condition of which he is aware, whether or not, by his own act, he caused or continued the condition or acquiesced therein. The duty which all landowners owe to the children of society, while at play on their lands, extends at least this far.
Authority for this conclusion is to be found in Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956), supra. The court there was dealing with an adult plaintiff who, if she was not an invitee, seems to have approximated more nearly the status of a licensee than that of a trespasser. *515 Nevertheless, the court, assuming her to be either a trespasser or a mere licensee (22 N.J., at page 462), held the defendant to a standard of "reasonable care" (22 N.J., at page 465). There a jury question was found to exist because of a breach of duty in connection with a natural condition, namely, the failure to clear snow and ice off the steps of an apartment house, and also in connection with sub-standard work of third persons in constructing the steps before defendant took possession of the house. Defendant acquired control of the house but a few weeks before the accident, and, so far as actually appears, it secured no rent or any benefit whatever from it. Incidentally, in reaching its broad conclusion as to the adult plaintiff there involved, the court relied upon a leading decision in this State dealing with trespassing children, Harris v. Mentes-Williams Co. Inc., 11 N.J. 559 (1953); it observed (22 N.J., at page 463) that the defendant in Harris was held to "a duty of ordinary care."
In certain other jurisdictions recovery has been had on behalf of child trespassers because of an artificial condition on defendant's land, caused by third persons and tolerated by defendant. Couer d'Alene Lumber Co. v. Thompson, 215 F. 8 (9 Cir. 1914); Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N.W.2d 354, 359 (Sup. Ct. 1954); Dehn v. S. Brand Coal & Oil Co., 241 Minn. 237, 63 N.W.2d 6 (Sup. Ct. 1954). As to natural conditions, see Prosser's view of the law. Prosser, supra, 443. But cf. Restatement, Torts, § 339, which declares a possessor of land to be liable only for artificial conditions "he maintains"; Gallagher v. Frederick, 366 Pa. 450, 77 A.2d 427 (Sup. Ct. 1951), supra; Botticelli v. Winters, 125 Conn. 537, 7 A.2d 443 (Sup. Ct. Err. 1939), which, however, turns on the question whether the possessor could reasonably be said to have anticipated harm and whether he had taken reasonable measures to safeguard the children.
The remaining contentions presented in conjunction with the first point in the case involve two other questions which are still open and undecided in this branch of the law. *516 First, is the duty of a land occupier to child trespassers of such a nature as to call upon him, within reason, to inspect the land so as to ascertain whether there are conditions thereon involving an unreasonable risk of harm to children? See Restatement, Torts, § 339(b) (for the definition of the words "should know," see § 334, comment b); 2 Harper and James, supra, 1459; contra, Prosser, 445, at n. 89. As to a defendant's duty to inspect his land so as to ascertain whether there is a condition thereon involving an unreasonable risk to licensees, cf. Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956); Harper and James, supra, 1471 n. 2; Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957), where the court did not have to deal with this question. Second, is a land occupier's duty to child trespassers of such a nature as to call upon him, within reason, to inspect his premises so as to ascertain whether children are likely to trespass thereon? See Restatement, Torts, § 339(a) (similarly for the significance of the words "should know," see § 334, comment b). These questions, however, need not be resolved in this case because in our opinion the proofs raise a jury question as to whether the defendant actually knew of the dumping on the vacant lots, of the fires thereon and of the children frequenting the lots.
We therefore dispose of the point at hand by holding that with respect to trespassing children, a land occupier is under a duty to exercise reasonable care in connection with an artificial condition on the land, where he knows that children are likely to trespass thereon and furthermore where he knows of the condition and should realize that it involves an unreasonable risk of harm to the children. Cf. Restatement, Torts, § 339. Whether the law goes further, need not be decided here.
Defendant's next point is that the trial court erred in admitting testimony, offered by plaintiffs on their case, as to conditions existing on the vacant lots. The alleged error is that it turned out, after defendant had put in its case, that some of this testimony had to do with conditions existing before it took title to the premises. In the pretrial order *517 defendant had admitted ownership of the lots at the time of the accident "and for some time prior thereto." When the above-mentioned testimony was proffered, the court allowed it in, "subject to any showing that will limit the period of control," thus apparently suggesting to defendant that after it had established on its case the date when it took control of the premises, it should then move to strike the testimony as to conditions existing prior to that date. Without dealing further with the point, we may say we see no prejudice in the ruling.
Defendant's final point is that the verdict of $7,500 in favor of the father of the infant is excessive. The father is entitled to $1,602.30 because of medical expenses in that amount incurred by him on the boy's behalf. But there is no indication whatever in the proofs that the boy's injuries will require future medical attention, and hence the father is not entitled to the difference between $7,500 and $1,602.30, or to any part of it, unless he has sustained some pecuniary loss in connection with his right to the boy's services and earnings before majority or emancipation. The testimony shows that the skin over the scar tissue does not stretch like normal skin or sustain trauma as well. Under trauma the leg bruises and bleeds more easily than a normal leg. While it can be moved apparently without difficulty, it is one-half inch shorter than the other leg, a condition which will probably persist; and because of its propensity to bruising and bleeding, the leg cannot be exposed to swimming or athletics.
As a general rule, the law refuses to allow a plaintiff damages relating to the future consequences of a tortious injury unless the proofs establish with reasonable probability the nature and extent of those consequences. Budden v. Goldstein, 43 N.J. Super. 340, 347 (App. Div. 1957); Restatement, Torts, § 912, comment e. But there are exceptions to this rule, which spring from various exigencies, as, where such damages are sued for as a result of a scar. Further see Restatement, Torts, § 912, comments a and b. Another exception arises where a parent sues for the loss of *518 services he may suffer in the future as the result of an injury sustained by a child of his when very young. The law, recognizing that the enforcement of the general rule in such a circumstance would furnish the wrongdoer with an immunity from one consequence of the wrong he has inflicted, allows recovery in any case where the proofs disclose a reasonable basis for finding, in all probability, some loss of service in the future. Cf. Davis v. Gibbs, 23 N.J. Super. 558, 565 (App. Div. 1952). Clearly the trial judge should not send the issue to the jury merely because the child has suffered a permanent injury. However, where because of the permanent injury, the judge is of the view that reasonable men could find that probably there will be some resultant loss of services, then even in the absence of proofs showing the nature of the services lost or the extent of that loss and indeed in the absence of testimony that there probably would be some loss, he must submit the issue to the jury. The jury are allowed to rely upon common experience. Of course, their verdict is subject to the control of the court on a motion for a new trial or on appeal, pursuant to the general rules, R.R. 4:61-1, 1:5-3(a).
The courts have frankly recognized that in this situation the jury should be given a certain latitude within which to pursue their own speculations in determining what should be the proper amount of the verdict. Thus, speaking of an infant 3 1/2 years of age, the court in Jackiewicz v. United Illuminating Co., 106 Conn. 310, 138 A. 151, 152 (Sup. Ct. Err. 1927) said:
"It is uncertain what part of this period he will live, or what his condition of health will be during such period. It cannot be told what character, competency, and capacity or personality he may develop, or what field of usefulness he may be fitted for, or what his earnings will be. To procure evidence of the future earning capacity of a child of tender years, would, in most cases, be impossible, and result in the denial of a recovery by a parent for such loss."
Further, see Campbell v. City of Philadelphia, 252 Pa. 387, 97 A. 456, 457 (Sup. Ct. 1916):
*519 "It is true, that the plaintiff has not established by direct evidence what diminution of earning power she has sustained by showing what she earned at the time of the accident or would probably earn in the future. Such elements may be shown and considered by a jury as a basis for determining earning capacity, and would be required in the case of an adult, but we have never extended the rule so as to require such evidence in the case of a child of the plaintiff's age. If such testimony was produced, it would be merely speculative, and would have very little ground to support it. To require it would deprive an injured child of the plaintiff's age of the protection of the law against the careless and negligent acts of another."
For other instructive cases, see Netherland-American Steam Nav. Co. v. Hollander, 59 F. 417 (2 Cir. 1894) (allowing recovery, notwithstanding that "any evidence respecting the prospective loss [of services] would necessarily have been speculative and hypothetical, and could not have been any real assistance to the jury"); Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 407 (4 Cir. 1948), noted in 27 Tex. L. Rev. 92 (1948); City of Chicago v. Hesing, 83 Ill. 204, 207 (Sup. Ct. 1876); Curran v. Lewiston A. & W. St. Ry. Co., 112 Maine 96, 90 A. 973 (Sup. Jud. Ct. 1914) (death case  "all that can be done toward calculating the future value of a young child to its parents is to make an estimate based upon such presumption of that value as may be derived from common knowledge and experience, as no evidence is possible that can foretell the future history of any given child"); Birkett v. Knickerbocker Ice Co., 110 N.Y. 504, 18 N.E. 108 (Ct. App. 1888); Prosser, supra, 700, at n. 24; Harper and James, supra, 1317.
For the New Jersey cases, see Mathias v. Luke, 37 N.J. Super. 241, 247 (App. Div. 1955), explaining Davis v. Gibbs, 23 N.J. Super. 558 (App. Div. 1952), supra; Graham v. Consolidated Traction Co., 64 N.J.L. 10, 14 (Sup. Ct. 1899) (death of a four year old boy  "damages in such cases must be estimated on probabilities, and, as was said by Chief Justice Beasley, to a large extent upon conjectures and uncertainties"), 62 N.J.L. 90 (Sup. Ct. 1898); see Marsh, "Judicial Influence of Chief Justice Gummere," *520 3 Mercer Beasley L. Rev. 1, 3-5 (1934); Fabiano v. Berckes, 1 N.J. Misc. 406 (Sup. Ct. 1923) (future earnings of a boy age 11 have "a probable and speculative value" and are "eminently for a jury to pass upon"); Alisauskas v. Itro, 9 N.J. Misc. 1057 (Sup. Ct. 1931) (permanent deafness of the child, resulting in a verdict of $1,200 in favor of the father, perhaps all for loss of services; verdict sustained, though "to some extent a matter of guesswork"). Cf. McStay v. Przychocki, 7 N.J. 456, 462 (1951) (deaths of 10- and 12-year boys); Kasiski v. Central Jersey Power and Light Co., 4 N.J. Misc. 130, 133 (Sup. Ct. 1926).
Here it appears "clearly and unequivocally" (Hartpence v. Grouleff, 15 N.J. 545 (1954)) that there is no reasonable basis whatever for finding that the child's injuries probably will in any way impair his earning power or affect any benefit his father would otherwise have received from him as a result of services rendered in every day affairs until his majority or emancipation. Mathias v. Luke, 37 N.J. Super. 241, 248, supra. The judgment insofar as it was entered in favor of the father will therefore be modified so as to reduce it to the sum of $1,602.30, and except as so modified, the entire judgment will be affirmed. As to the power of the court thus to reduce a judgment, see Davis v. Gibbs, 23 N.J. Super. 558, 567 (App. Div. 1952). No question is raised as to the right of the mother with respect to the boy's services. N.J.S.A. 9:1-1; Blackman v. Iles, 4 N.J. 82, 89 (1950).
Modified.