320 F.2d 703
 115 U.S.App.D.C. 384
 Gertrude McGETTIGAN et al., Appellants,
v.
NATIONAL BANK OF WASHINGTON and Fred A. Smith & Co., Appellees.
 No. 16904.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 3, 1963.
Decided May 16, 1963, Petition for Rehearing En Banc Denied
June 27, 1963.
 
 Mr. Harry W. Goldberg, Washington, D.C., with whom Messrs. Morris Altman, Joseph Gelb and Max M. Goldberg, Washington, D.C., were on the brief, for appellants.
 Mr. Paul R. Connolly, Jr., Washington, D.C., with whom Mr. James A. Belson, Washington, D.C., was on the brief, for appellees.
 Before EDGERTON, Senior Circuit Judges, and FAHY and WRIGHT, Circuit judges.
 FAHY, Circuit Judge.
 
 
 1
 Gertrude McGettigan, individually and as mother and next friend of Charles S. McGettigan, a minor, sued the National Bank of Washington, a corporation, individually and as trustee, and Fred A. Smith & Company, a corporation, for damages alleged to have been suffered by the minor in circumstances to be explained insofar as this can be done on the present record. Following rather full pretrial proceedings, including the taking of depositions, and upon the basis also of allegations in the pleadings, the District Court granted the motion of defendants for summary judgment. Plaintiffs' motion for reconsideration was denied. This appeal was then taken by plaintiffs.
 
 
 2
 Although there may not now appear to be any 'genuine issue as to any material fact,' we think defendants were not 'entitled to a judgment as a matter of law' and therefore not entitled to summary judgment. Fed.R.Civ.P. 56(c). The pleadings, depositions and other evidentiary matters before the court were sufficient if followed by proof at trial to permit a jury to find the facts now to be outlined. The defendant corporations were responsible, as owner and agent, respectively, for the care of a building near the heart of Washington known as 2413 Pennsylvania Avenue, N.W., held in the name of the bank defendant as trustee. In the rear of the main building was a small structure where the occurrences leading to this case arose. Although some years ago this structure was in good condition it had seriously deteriorated. Doors had disappeared. Windows were out and the glass broken. The structure was open to the elements, and was a hangout for persons of questionable occupations and habits. The interior was cluttered with debris and the roof was insecure. The structure was used at times as a sort of club house for young thieves, who engaged in the practice of stealing flares from various sources, including railroad cars and telephone trucks, and using them for their amusement near the premises. The place was the subject of complaints by neighbors. Beginning in 1955 an employee of the defendant agent made a weekly inspection, which disclosed accumulations of debris. A policaman on several occasions advised the agent of the decrepit condition of the premises, the accumulation of junk, and the presence of vagrants. Although the agent, Smith & Company, agreed to correct the situation, nothing was done prior to the accident soon to be described.[1] No effort was made to close the structure, remove the debris, or restrict its use by children, delinquents and vagrants.
 
 
 3
 On March 3, 1956, John, eleven years of age and brother of the minor plaintiff, was playing in the structure. He obtained from the trash and junk there a cylindrical, tubular object, which he took to his home nearby, unaware of what it was. And the boy had seen it several times before during the months he played in the structure. He mother either found the object lying in the kitchen or was given it by another son and placed it in a paper bag outside the back door where there was a small porch. The following day, March 4, the minor plaintiff, then nine years of age, was seen by his mother playing with the object, which he had broken in two. Material that looked like sand had come out of it. His mother told the boy to sweep this up. Some minutes later there was an explosion which severely burned the boy. It appears the substance was powder and that the boy applied a lighted match to waxed paper on which he had swept the powder.
 
 
 4
 It is not alleged that the defendants brought the flare to the premises or knew it was there.
 
 
 5
 We think the plaintiffs set forth facts which, if proved, would permit a jury to find that defendant landowner and his agent were negligent. This being so, and substantial damages having been alleged as stemming from that negligence, the case should have been submitted to the jury.
 
 
 6
 Negligence is 'conduct * * * which falls below the standard established by law for the protection of others against unreasonable risk of harm.' Restatement, Torts 282 (1934); 2 Harper & James on Torts 896 (1956). And the standard of conduct to be applied is that of the reasonable man in like circumstances. See Prosser on Torts 124 (1955). Whether a defendant has acted as a reasonable man in the circumstances is said to depend upon whether his conduct-- act or omissions-- created an unreasonable risk of harm toward a plaintiff. This principle is some times stated in terms of duty, viz., whether the defendant had a duty to use care toward plaintiff, and if so whether it was breached by the conduct complained of. See Winfield, 'Duty in Tortious Negligence,' 34 Columbia L.Rev. 41 (1934). The ultimate question is whether defendant can fairly be said to be responsible for the injuries complained of.[2] If reasonable men could not differ in answering that question the court, it is said, should not allow the jury to speculate about it; but if reasonable men could differ and draw different inferences from the facts or find one set of facts when two are offered and from those found could conclude that defendant's conduct was negligent, then the jury ought to be permitted to answer the ultimate question. Grand Trunk R. Co. of Canada v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485 (1892).
 
 
 7
 Defendants are in the position of an owner or occupier of land, for whom the common law created something of a special status. He was not liable at common law for injuries to a person coming on his land unless such person was an invitee, guest or licensee. If he were a trespasser he could not hold the landowner or occupier liable for his injuries. See Green, 'Landowner v. Intruder; Intruder v. Landowner. Basis of Responsibility in Tort,' 21 Mich.L.Rev. 495 (1923). But the law has not remained static in this area. Just as it has advanced in recognition of the need for greater protection to both persons and property from the affirmative acts of another, making negligence the central basis for civil liability,[3] it also has tended to bring the landowner or occupier within similar rules, leaving his status less privileged than it was previously. This has been especially evident in the case of children of tender years.
 
 
 8
 This brings us to the case of Sioux City & Pacific R. Co. v. Stout, 84 U.S. (17 Wallace) 657, 21 L.Ed. 745 (1873). A six year old child was playing on an unguarded, unlocked railroad turntable which when set in motion caught and crushed his foot. The Court, seemingly treating the child's presence and that of other children on defendant's land in the past as but one of the circumstances in which it was to be decided whether the landowner's conduct was proper, said:'If from the evidence given it might justly be inferred by the jury that the defendant, in the construction, location, management, or condition of its machine had omitted that care and attention to prevent the occurrence of accidents which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff.'
 
 
 9
 84 U.S. at 661, 21 L.Ed. 745. From this beginning the courts have fashioned a concept called attractive nuisance, under which the status of an intruding child is like that of an invitee rather than a trespasser. In other words the principles of negligence become relevant notwithstanding the child came upon the owner's land whithout permission. But there was under the earlier approach of the doctrine the requirement of an allurement as well as the test of negligence. This ceased to be a serious obstacle to recovery, however, when courts began to abandon the fiction of an invitation by allurement and recognized-- as the Restatement has-- another basis for the result reached in such cases as Stout, namely, the value of the lives of children to society. See, e.g., Wolfe v. Rehbein, 123 Conn. 110, 193 A. 608 (1937); Drew v. Lett, 95 Ind.App. 89, 182 N.E. 547 (1932). And compare Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 540 (1934), Sioux City & Pacific R. Co. v. Stout, supra, and Eastburn v. Levin, 72 App.D.C. 190, 113 F.2d 176 (1940), with United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1922), and Branan v. Wimsatt, 54 App.D.C. 374, 298 F. 833 (1924).
 
 
 10
 In Best v. District of Columbia, supra, the dangerous condition which caused the child's death was a hole in the defendant's wharf and not the piles of sand upon which children had previously played. And in Eastburn v. Levin, supra, this court said:
 
 
 11
 'The underlying question is whether it is better to let occupants arrange their premises in total disregard of neighboring children, or to require them to take such precautions as a normal person would when their premises are attractive and insidiously dangerous to children too young to look out for themselves and when the intrusion of such children is likely. On the one side is the occupant's interest, and the general interest, in the profitable use of land. On the other is the child's interest, and the interest of his parents and of society, in life and limb and in compensation for their injury.'
 
 
 12
 72 App.D.C. at 192, 113 F.2d at 178. The emphasis here is upon a balancing of several interests in the light of conduct that threatens harm, judged by the standard of the reasonable man. And see Branan v. Wimsatt, supra.
 
 
 13
 In the present case defendants contend that since the dangerous instrumentality was not used by them or brought by them onto their premises the plaintiffs could not recover. This contention fails to take account of the scope both of the law of negligence and the full development of the attractive nuisance doctrine, that is, the rule of liability of a landowner for negligence with respect to children of tender years.[4] Courts have extended to such children the protection of the law to include injuries occurring off the defendant's premises. Thus where a child found dynamite caps and took them home where his brother, also a child, played with them and was injured by the resulting explosion, the injured child was allowed to recover. Dezendorf Marble Co. v. Gartman, 333 S.W.2d 404 (Tex.Civ.App.1960). See also Vills v. City of Cloquet, 119 Minn. 277, 138 N.W. 33 (1912); Kingsland v. Erie County Agriculatural Soc'y, 298 N.Y. 409, 84 N.E.2d 38 (1949); Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369 (1932). It is said that the defendant's conduct in maintaining the condition carries an unreasonable risk of harm to such children when the presence of children on the premises is expected. See Prosser, 'Trespassing Children,' 47 Calif.L.Rev. 427, 448-50 (1959).
 
 
 14
 Nor is the doctrine inapplicable because the dangerous condition is not created by the landowner or possessor. If third persons, even trespassers unknown to the landowner or occupier, come onto the land and create the artificial condition or deposit the harmful object, and the owner does nothing to remedy the condition after a reasonable opportunity to do so, he may be resposible. Roman v. City of Leavenworth, 90 Kan. 379, 133 P. 551 (1913); Simmel v. New Jersey Coop. Co., 47 N.J.Super. 509, 136 A.2d 301 (App.Div.1957), rev'd on other grounds, 28 N.J. 1, 143 A.2d 521 (1958); Johnson v. Sculley Constr. Co., 255 Minn. 41, 95 N.W.2d 409 (1959). But see Gallagher v. Frederick, 366 Pa. 450, 77 A.2d 427 (1951).
 
 
 15
 In the language of the Restatement, Torts 339(b), 'the condition (must be) one of which the possessor knows or should know * * *.' One aughority suggests that the alternative 'should know' does not reflect the law.[5] This view fails to appreciate the development reflected in the Restatement as well as in some of the decided cases, see n. 5, supra, and taxt p. 706, supra, which shifts liability to children to a straightforward negligence basis. The effect of the progressive application of the attractive nuisance doctrine has been, we think, to erase the line separating landowners and occupiers from other persons generally, when their acts or omissions create an unreasonable risk of harm to children of tender years. James, 'Tort Liability of Occupiers of Land: Duties Owed to Trespassers,' 63 Yale L.J. 144, 164 (1953). See, e.g., Wolfe v. Rehbein, supar, where it is said:
 
 
 16
 'If the presence of children is to be anticipated, the care to be exercised is such as is reasonable having in view the probability that children, because of their youth, will not discover the condition or realize the risk involved in intermeddling in it or on coming within the area made dangerous by it. * * *'
 
 
 17
 123 Conn. at 116, 193 A. at 610-611.
 
 
 18
 Applying these principles to the facts which might be proved in the instant case, which we repeat in summary form, we find a rundown building in or near the heart of a large city. Doors had disappeared from the structure, and the interior had become cluttered with debris of various kinds. Persons of questionable habits used the place as a hangout. Neighbors complained of the building's condition. Policemen advised the owner's agent on more than one occasion of the building's rundown condition and of the periodic presence of vagrants. Furthermore, a general provision of the D.C. Code was in effect at the time which placed upon landowners the specific responsiblity to see to it that their land was kept free of dangerous debris.[6] Children had played on the premises previously. The plaintiff's brother had himself played there before the occasion in question when he pulled out of the debris the object which when exposed to the minor plaintiff and his childish curiosity about its contents caused his injuries. Finally it is not contended that defendants had attempted either to remove the trash or to board up the premises. Upon proof of these circumstances we think the question of defendants' negligence should be submitted to the jury.
 
 
 19
 This is not a case of a vacant lot in the suburbs where a trespasser but the day before has set a trap, nor a case of a boarded warehouse in the city where others have broken in and stored their loot. Rather our case appears at present to be one of a landowner who has allowed flammable flares to be deposited-- undetected and unremoved-- for such a period of time as to warrant submitting to the jury the question whether in all the circumstances of the case this was negligent. There is not only the continued presence of the flare, the harmful nature of which could not readily be appreciated by young children, but the accumulation of junk which defendants failed to remove and of which the flare turned out to be a part. The data before the trial court created an issue as to an unreasonable risk of harm towards the minor plaintiff, a child of the neighborhood, whose injury a jury might reasonably conclude might have been prevented by due care on the part of defendants. The jury should be allowed to decide whether due care was in fact exercised, because reasonable men might differ as to what was required of defendants in the factual situation the jury could have found to exist. See Grand Trunk R. Co. of Canada v. Ives, supra at p. 705.
 
 
 20
 Two matters remain for additional comment. First, we are referred to the concept of foressability represented by the case of Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928), wherein liability was denied when the court found that a push of a passenger carrying concealed fireworks was not a wrong with respect to the plaintiff standing some distance down the platform. The court did not say that no risk of harm was created by the act of the defendant's agent. Rather it found that the ambit of the risk did not include the plaintiff injured by falling scales after the explosion caused by the dropping of the fireworks by the passenger who was pushed. The circumstances of the instant case are different in significant respects, for here a general condition prevailed which put the landowner on notice, or so the jury could find, that his land was being abused or missused. Furthermore the presence of children who could not be expected to appreciate and therefore avoid the risk created by the flare is a factor here of utmost significance.
 
 
 21
 Finally, whether the negligence which we think can be made out on the facts here alleged will render the appellees responsible in damages is a question of proximate cause.[7] We are told that the minor plaintiff's mother had an opportunity to see the flare and left it in reach of the child injured by it. We agree that the record supports such a view of the facts. But we are not prepared to say that the defendants' negligence, if any, was not a proximate cause of the injury, bearing in mind that in the case of minors the negligence of a parent may not normally be imputed to the minor.[8] See 2 Harper & James, supra, at 1270-71; and cases collected in 15 A.L.R. 414 (1921). And, generally on the question of proximate cause, see Hanna v. Fletcher, 97 U.S.App.D.C. 310, 231 F.2d 469 (1956), and Dezendorf Marble Co. v. Gartman, supra; Vills v. City of Cloquet, supra; Kingsland v. Erie County Agricultural Soc'y, supra. Furthermore, and we do not pass upon this aspect of the case since in a trial it may be permitted to go to the jury, even if two or more acts of negligence concur to produce a single injury, one tortfeasor is not relieved of liability merely because his negligence was earlier in time. It may still be a proximate cause of the injury. See Prosser on Torts 45 & 46 (1955); 2 Harper & James, supra, 20.3; Restatement, Torts 452 (1934).
 
 
 22
 The granting of appellees' motion for summary judgment was erroneous and the order appealed from is accordingly reversed.
 
 
 23
 Reversed.
 
 
 24
 Before BAZELON, Chief Judge, and WILBUR K. MILLER, FAHY, WASHINGTON, DANAHER, BASTIAN, BURGER, WRIGHT and MCGOWAN, Circuit Judges, in Chambers.
 
 ORDER
 
 25
 PER CURIAM.
 
 
 26
 On consideration of appellees' petition for rehearing en banc, it is
 
 
 27
 ORDERED by the court that the petition is hereby denied.
 
 
 28
 WILBUR K. MILLER, Circuit Judge, would grant the petition.
 
 
 29
 DANAHER, Circuit Judge dissents from the foregoing order and would grant appellees' rehearing en banc for the following reasons: 'This extraordinary case involves the ultimate possible liability of a landowner for injuries received, not by one who was a trespasser, but by his younger brother playing in his own back yard. If the opinion were limited to permit recovery because of injuries received by the trespasser when on the land, due to causes of which the landowner had some notice-- or as to the existence of which he fairly might be charged with notice-- I would think the opinion sound. Compare, for example, Dezendorf Marble Company v. Gartman, 161 Tex. 535, 343 S.W.2d 441 (Tex. 1961), where the appellant owned the dynamite cap and as a user of blasting equipment owed a high degree of care.
 
 
 30
 'Here, however, the injury did not occur on the land. The plaintiff's 11-year-old brother brought the flare to his home. It bore a label showing it had been manufactured by the 'Hitt Fireworks Co.' His 15-year-old brother took the flare from the younger lad, and it was given to the boy's mother. Labeled as it was, the 15-year-old boy obviously recognized it as a possible source of danger. Certainly the mother could have done so. The mother had it within her power to make a condition of safety sure, but did not do so. Instead, she placed the flare in her own trash from which the following day it was removed by her younger son, the plaintiff. The lad broke it open and released the powder which looked like that found in fireworks. The mother saw what had happended. She thought it looked like sand. She thereupon directed the child to clean up the powder and left. Then it was that the boy found wax paper, lighted it and touched off the powder to his injury.
 
 
 31
 'It well may be that a study of the whole record and consideration of the authorities would find me in agreement with what has been said by the sitting division. I am sufficiently distrubed by the full import of the far-reaching result here reached that I would have liked to here the case argued.'
 
 
 32
 BASTIAN, Circuit Judge, did not participate in the foregoing order.
 
 Supplemental Opinion
 
 33
 Before EDGERTON, Senior Circuit Judge, and FAHY and WRIGHT, Circuit Judges.
 
 
 34
 FAHY, Circuit Judge.
 
 
 35
 Appellees' petition for rehearing en banc, which has been denied, points out that we failed to note that the proposed change in the language of 339 Restatement, Trots, had been approved by the American Law Institute. As the section now reads the language 'should know' in Clauses (a) and (b), is changed to 'has reason to know.' With respect to this change the Institute Council stated that the decisions are unanimous to the effect that the possessor is under no duty to investigate to ascertain whether children are trespassing, or are likely to trespass. The Council also explained that 'should know' involved an obligation of reasonable care to investigate the facts, while 'has reason to know' means that the possessor knows enough to infer that the fact exists, or to govern his conduct on the assumption that it exists. We adhere to our views as expressed in our opinion, adding that were we to apply the changed language of Section 339 of the Restatement to this case a reversal would still be required; for the data before the District Court if followed by proof would enable a jury to find that appellees had reason to know that the 'fact'-- that is, the described condition-- existed and the place was being used by children. If, however, the change in Section 339 means that in such a situation as is now before us the appellees must be shown to have had reason to know that the flare itself existed among the rubbish, we disagree. A landowner or occupier may know or be charged with notice of a condition on his premises which should reasonably lead him to take precautions against intruding children of tender years without specific, positive, and current knowledge of the particular thing, constituting a part of that condition, which afterwards causes injury. As an example, an unguarded and clogged pond or pool of generally shallow water may conceal a deep well, as in Coeur d'Alene Lumber Co. v. Thompson, 215 F. 8, 17-18 (9th Cir., 1914). And see 2 Harper & James on Torts 1458-59 (1956).[9]
 
 
 
 [1]
 We do not hold that these conditions existed. The pleadings and depositions indicated plaintiffs could introduce evidence that they did exist
 
 
 [2]
 'On the whole the rules of accident law are so formulated as to give the jury considerable scope in deciding what the parties should have done, in each specific case, as well as what they did do.' 2 Harper & James at 881
 
 
 [3]
 See, e.g., Brown v. Kendall, 6 Cush. (60 Mass.) 292 (1850); 8 Holdsworth, History of English Law, 446-59 (1937)
 
 
 [4]
 Even 90 years after the Stout decision an adult on the land of another confronted by the same conditions would most likely be held to have assumed the risk or been contributorily negligent or to have no valid claim under the older traditional concepts of duty according to category-- trespasser, licensee, invitee. See Green, 'Landowners' Responsibility to Children,' 27 Texas L.Rev. 1, 13, note 39 (1948), for a biref discussion of the adult's status and collection of some of the cases. But there is the suggestion here that a slight trend away from such result in cases of trespassing adults may be in the making
 
 
 [5]
 Notwithstanding the wishful thinking of distinguished legal writers, no case has ever held that the possessor is required to inspect his land, or to police it, to discover whether there is any condition upon it which will be likely to harm trespassing children. * * * On the contrary, the decisions are all to the effect that unless he knows of the condition there is no liability
 Prosser, supra, 47 Calif.L.Rev. at 451. To the contrary, see Coeur d'Alene Lumber Co. v. Thomspson, 215 F. 8 (9th Cir., 1914); Dehn v. S. Brand Coal & Oil Co., 241 Minn. 237, 63 N.W.2d 6 (1954); Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N.W.2d 354 (1954); Johnson v. Sculley Construction Co., supra.
 
 
 [6]
 5 D.C.Code 504 provides as follows:
 'The existence on any lot or parcel of land, in the District of Columbia, of * * * miscellaneous materials or degris of any kind, including substances that have accumulated as the result of repairs to years or any building operations, insofar as they affect the public health, comfort, safety, and welfare is hereby declared a nuisance dangerous to life and limb, and any person, corporation, partnership, syndicate, or company, owning a lot or parcel of land in said District on which such a nuisance exists who shall neglect or refuse to abate the same to the satisfaction of the commissioners of the District of Columbia, after five days' notice from them to do so, shall, on conviction in the Municipal Court * * * be punished by a fine of not exceeding $50 for each and every day said person, corporation, partnership, or syndicate, fails to comply with such notice. * * *'
 'Where the acts which create a public 'Where the acts which create a public nuisance cause also private and special injury to an individual, an action at law will lie. (Citing, inter alia, Aldrich v. Wetmore, 52 Minn. 164, 53 N.W. 1072 (1893).)'
 District of Columbia v. Totten, 55 App.D.C. 312, 318, 5 F.2d 374, 380 (1925). See also Thayer, 'Public Wrong and Private Action,' 27 Harv.L.Rev. 317, 334-35 (1914). In National Bank of Washington v. Dixon, 112 U.S.App.D.C. 183, 301 F.2d 507 (1961), this court approved the trial court's sumbission to the jury, on the question of a landowner's liability for personal injuries, the subsidiary question whether certain housing regulations were violated and if so whether the violation amounted to negligence.
 
 
 [7]
 Insofar as the appellees rely on lack of foreseeability as going to the issue of proximate cause, we point out this court has in the past said:
 'We are committed to the rule in negligence cases that where in the natural and continual sequence, unbroken by any intervening cuase, an injury is produced which, but for the negligent act would not have occurred, the wrongdoer will be liable. And it makes no difference whether or not that particular result was foreseeable.'
 Hitaffer v. Argonne, 87 U.S.App.D.C. 57, 61, 183 F.2d 811, 815 (1950).
 
 
 [8]
 If the jury were to find that the parent was contributorily negligent, the parent's action in her own behalf would alone be affected
 
 
 [9]
 The cited authority provides the following analysis:
 'Inspection is one of the commonest precautions which the duty of care may require a defendant to take for the removal of danger. But is has been said that the occupier of land owes no duty of inspection to discover conditions dangerous to trespassing children. Such a rule would, of course, be a logical enough corollary of the notion that landowners owed no duty of care to trespassers. But if the general principles of negligence are to be substituted for the older special immunities, then any exemption from a duty to inspect, as a matter of law in all cases, is either a vestige of the older principle which is out of place under the newer one, or the erection of a fixed standard of conduct that relieves one class of defendants from one of the precautions commonly incidental to the exercise of ordinary care. Here, as elsewhere, in any given case, inspection may not be feasible or may seem uncalled for; or an inspection which would have disclosed the particular condition may be unreasonably burdensome. And under general principles, if the danger was neither known in fact nor discoverable by reasonable inspection, the occupier cannot be held. There is no reason in logic or policy for extending the exemption further.'