Alva Laverne LUCK and Jenell A.
Baker, a minor child, Appellants,

v.

The BALTIMORE AND OHIO
RAILROAD COMPANY.

No. 73–1276.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 4, 1974.

Decided Dec. 5, 1974.

As Amended Feb. 28, 1975.

Rehearing Denied March 10, 1975.

**664**

John A. Keats, Washington, D. C., for appellant.

Laidler B. Mackall, Washington, D. C., with whom Scott R. Schoenfeld, Washington, D. C., was on the brief for appellee.

Before TAMM and ROBINSON, Circuit Judges, and HART,* Chief Judge for the District Court for the District of Columbia.

TAMM, Circuit Judge:

Plaintiff-appellant Alva Laverne Luck, individually and on behalf of her daughter, the minor-plaintiff Jenell Baker, commenced this negligence action in district court against defendant-appellee Baltimore & Ohio Railroad Co. The case was tried to a jury, which returned a $2,000 verdict for appellant as representative of the minor-plaintiff. Appellant moved for a new trial limited to the determination of damages, see Fed.R. Civ.P. 59(a), and appellee moved for judgment notwithstanding the verdict. The district court denied appellant's mo-

tion for a new trial and entered judgment *n. o. v.* in an opinion and order reported at 352 F.Supp. 331 (D.D.C.1972). Appellant challenges both rulings of the district court. For the reasons stated herein, we reverse the entry of judgment *n. o. v.* and affirm the denial of a new trial on the issue of damages.

I

■ The evidence adduced at trial conflicted sharply on almost every material issue. Nevertheless, in reviewing a judgment *n. o. v.* the court must resolve such conflicts in favor of the party for whom the jury rendered its verdict. See Princemont Construction Corp. v. Smith, 140 U.S.App.D.C. 111, 433 F.2d 1217, 1220 (1970); Alden v. Providence Hospital, 127 U.S.App.D.C. 214, 382 F.2d 163, 165 (1967); 5A J. Moore, Federal Practice ¶ 50.07[2] (2d ed. 1974). Viewing the evidence in this light, the jury could have accepted the following account of the incident.

On August 11, 1970, Jenell Baker, then aged 8, saw Tyrone, her six year-old brother, standing on the railroad tracks near their home in a congested residential area of Northeast, Washington. He was playing "superman," and apparently was intent upon stopping an on-coming freight train owned by the appellee. Tr. at 12. Jenell ran from the porch of her home to the tracks. She arrived in time to push her brother to safety, but was unable to clear the tracks completely before being struck by some part of the engine. Tr. at 13–14. Although a slight decrease in speed could have given Jenell time to clear the tracks, the train never slowed. Tr. at 16, 80. There was evidence that virtually simultaneously with the accident, the train's crew was seen "having a conversation" and "laughing among themselves." Tr. at 50–51, 77–80. Coupled with the fact that the train did not slow down, the jury could have inferred from this testimony that the crew's lookout was inadequate. There

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

was also testimony from which the jury could have concluded that the railroad knew or had reason to know that neighborhood children frequently played near the tracks. Tr. at 90–93.

█ Appellant based her case principally on the rescue doctrine, which provides that an injured rescuer may recover from the party whose negligence imperilled the rescuee without proving the breach of a separate duty owed to the rescuer.[1] *See* W. Prosser, The Law of Torts, § 44, at 277 (4th ed. 1971). To establish the standard of care owed to Tyrone, the rescuee, appellant relied on the recent case of Smith v. Arbaugh's Restaurant, Inc., 152 U.S.App.D.C. 86, 469 F.2d 97 (1972), cert. denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973), in which a division of this court repudiated the common law classification of trespassers, licensees, and invitees, and instead held the owners and occupiers of land in the District of Columbia to a standard of ordinary care.[2] Thus, appellant argued that the failure of appellee's crew to maintain an adequate lookout was a breach of duty that imperilled Tyrone, thereby allowing Jenell to recover.

At the close of the evidence, appellee moved for a directed verdict on the ground that Tyrone was a trespasser to whom the railroad's only duty was to prevent a willful, wanton, or intentional injury, and that there was no evidence to establish a breach of this lesser standard of care. Accordingly, appellee argued, Jenell could not recover because the railroad had not negligently imperilled Tyr-

one. Appellee offered an elaborate theory in response to appellant's reliance on Smith v. Arbaugh's Restaurant, Inc., *supra*. Appellee reasoned first that the District of Columbia Court Reorganization Act of 1970, 11 D.C.Code § 102 (1973), vested the District of Columbia Court of Appeals with jurisdiction similar to that of the highest court of a state; therefore, by analogy to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal courts were required to apply the rules of decision of the District of Columbia Court of Appeals on matters of local law. Appellee next maintained that since the District of Columbia Court of Appeals has not yet considered the question of the standard of care due from landowners in the District of Columbia, the controlling rule of decision was that announced in M.A.P. v. Ryan, 285 A.2d 310 (D.C.App.1971). In *M.A.P.* the District of Columbia Court of Appeals stated that it would not be bound by decisions of the United States Court of Appeals rendered after February 1, 1971, but that circuit court cases decided before that date "constitute the case law of the District of Columbia." *Id.* at 312. To complete its argument, appellee asserted that the pre-February 1, 1971 case law unqualifiedly supports the traditional common law distinction between trespassers, licensees, and invitees, placing principal reliance on Firfer v. United States, 93 U.S.App.D.C. 216, 208 F.2d 524 (1953).

The district court denied appellee's motion and allowed the case to go to the jury. Drawing upon ordinary negligence

---

1. The district court judge properly instructed the jury that Jenell, the rescuer, could recover if they found that the railroad's negligence had imperilled Tyrone, the rescuee. Tr. at 246–48. The reported opinion of the court, however, is ambiguous on this point. Initially, the court's opinion properly notes that "[a]bsent a showing of breach of duty to Tyrone, the rescue doctrine was not available to Jenell." 352 F.Supp. at 334. Later, the court states that "[i]n order for a rescuer to recover he must prove breach of duty owed to him." *Id.* The latter statement is ambiguous in that it could mean breach of a duty

owed to the rescuer *independently,* or breach of a duty owed *derivatively* because of his status as rescuer. We reject as erroneous any interpretation of the district court's language which suggests that, to recover, a rescuer must prove a separate breach of a duty owed independently to him.

2. Since the plaintiff in Smith v. Arbaugh's Restaurant, Inc. would not be a trespasser under the common law classifications of persons upon the land, the division's holding with respect to trespassers is in a strict sense dicta.

principles, the trial judge instructed the jury that the railroad owed a duty of reasonable care under the facts and circumstances surrounding the accident. He also instructed that Jenell could recover if the railroad breached this duty. Tr. at 242, 247–48. After deliberating for several hours, the jury returned a verdict of $2,000 for appellant as representative of Jenell.[3] Appellant moved for a new trial to redetermine the damages suffered by Jenell, while appellee moved for judgment *n. o. v.* on the same ground as its motion for a directed verdict. The trial court accepted appellee's argument that Firfer v. United States, *supra,* rather than Smith v. Arbaugh's Restaurant, Inc., *supra,* embodied the controlling standard of care. The court then concluded that there was no evidence that appellee had breached the duty owed to the trespasser, Tyrone, nor was there any evidence that appellee had breached any duty that might be owed to Jenell separately, and therefore entered judgment *n. o. v.* 352 F.Supp. at 333–334. The trial judge also noted that in any event he would have denied appellant's motion for a partial new trial. *Id.* at 334 n. 8.

II

■ Appellant vigorously argues that the district court correctly presented the case to the jury under the standard set forth in Smith v. Arbaugh's Restaurant, Inc., *supra,* and erred in granting judgment *n. o. v.* Appellee just as steadfastly maintains that the district court properly applied the rule of decision of the District of Columbia Court of Appeals, correctly determined that Firfer v. United States, *supra,* set forth the controlling legal standard, and did not err in entering judgment *n. o. v.* Thus, we are asked to define the relationship between

the federal courts and the "local" District of Columbia courts, a highly delicate task of statutory and constitutional interpretation, especially during the interim period of court reorganization when the federal courts and the "local" courts had concurrent jurisdiction over so-called local matters. *See* 11 D.C.Code §§ 501–502, 921–923 (1973). However, we need not resolve this difficult issue, for as discussed below, even prior to 1971, owners and occupiers of land in the District of Columbia were held to a duty of ordinary care to child-trespassers whose presence upon the land was or should have been foreseen.[4] Consequently, the jury was correctly instructed under either theory of the applicable law.

As early as 1873, the Supreme Court recognized that trespassing children should be treated differently than trespassing adults. In Railroad Co. v. Stout, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1873), a case tried as an ordinary negligence action, the Court upheld a judgment in favor of a six year-old child who was injured while playing on the railroad's property. Rejecting the rule that landowners owed no duty of care to trespassers, the Court stated that:

> if from the evidence given it might justly be inferred by the jury that the defendant, in the construction, location, management, or condition of its machine had omitted that care and attention to prevent the occurrence of accidents which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff.

84 U.S. at 661, 21 L.Ed. 745. However, the expansion of liability heralded by *Stout* was considerably limited by the development of the attractive nuisance doctrine, which forced *Stout* and other child-trespasser cases into the common law categories of persons upon the land

---

**3.** The jury also returned a verdict adverse to appellant in the suit that she commenced in her individual capacity. She does not appeal the judgment entered against her pursuant to that verdict.

**4.** Although we do not determine the correctness of appellee's argument concerning the precedential value of Smith v. Arbaugh's Restaurant, Inc., we note that appellee's conclusion has not been universally accepted. *See* M.A.S., Inc. v. Van Curler Broadcasting Corp., 357 F.Supp. 686 (D.D.C.1973).

by creating the legal fiction that a landowner who maintained a hazard on his property that might be attractive to small children impliedly licensed them to come on the land. *See* United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1922); Green, Landowners' Responsibility To Children, 27 Tex.L.Rev. 1, 5–9 (1948).

The limitation on landowner's liability inherent in the attractive nuisance doctrine was itself eroded by subsequent decisions of the Supreme Court and this circuit. In Best v. District of Columbia, 291 U.S. 411, 419, 54 S.Ct. 487, 78 L.Ed. 882 (1934), the Supreme Court, in reversing a directed verdict against a five year-old child, focused on the fact that the District of Columbia, as landowner, had reason to anticipate that children might play in the area in question. The Court noted that if plaintiff could prove his allegations concerning notice of the children's presence, then "reasonable prudence would require that precautions be taken for their protection." Moreover, this court, in Eastburn v. Levin, 72 App.D.C. 190, 113 F.2d 176, 177–178 (1940), recognized that the true rationale for imposing a higher standard of care upon landowners when dealing with foreseeable child-trespassers was not any notion of implied invitation, but rather a policy decision that society would be best served by encouraging landowners to prevent injury to small children.

Any remaining confusion concerning the landowner's duty to children was laid to rest in McGettigan v. National Bank of Washington, 115 U.S.App.D.C. 384, 320 F.2d 703 (D.C.Cir.), cert. denied, 375 U.S. 943, 84 S.Ct. 348, 11 L.Ed.2d 273 (1963). In *McGettigan,* this court again rejected the contention that a landowner could be held liable only where a trespassing child was injured by the hazard that attracted him onto the premises. Dispositively, the court stated that:

The effect of the progressive application of the attractive nuisance doctrine has been, we think, to erase the line separating landowners and occupiers from other persons generally, when their acts or omissions create an unreasonable risk of harm to children of tender years.

320 F.2d at 707 (citation omitted). The standard thus became whether, under all the facts and circumstances, the defendants had used due care in maintaining the property, a question that the court properly left for the jury. *Id.* at 708.

The principle made explicit in *McGettigan,* that landowners owe a duty of reasonable care to child-trespassers whose presence upon the land could be foreseen, has been repeatedly recognized in this circuit, *see* Smith v. Arbaugh's Restaurant, Inc., *supra,* 469 F.2d at 102; Daisey v. Colonial Parking, Inc., 118 U.S. App.D.C. 31, 331 F.2d 777, 778 (1963), and is an integral part of our common law principles. Thus, even if appellee is correct in reasoning that we must apply pre-February 1, 1971 case law, the result would not differ. Appellee's conduct must be judged by the standard of ordinary care. Whether appellee breached its duty was a question for the jury to decide.[5]

■ The evidence was clearly sufficient to support a jury verdict that appellee breached its duty of care. The jury heard testimony that children often played near the tracks where the accident took place, from which they could have reasonably inferred that appellee knew or had reason to know of the presence of small children. The jury also heard testimony that shortly after the accident the crew was not keeping any lookout at all. After hearing such evidence, the jury could have reasonably inferred that the crew was negligent in not keeping an adequate lookout at the time of the accident. Accordingly, the district court erred in granting judgment *n. o. v.,* and the jury verdict should be reinstated.

---

**5.** We intimate no view as to the railroad's duty had the trespasser in this case been an adult rather than a child.

## III

Appellant also contends that the trial judge erred in refusing to order a new trial on the issue of damages. While appellant's primary argument is that the damages awarded were so grossly inadequate that a new trial should be ordered, she also suggests the possibility of jury misconduct and alleges error in the judge's charge to the jury.

This circuit adheres to the rule that the disposition of a motion for a new trial is committed to the sound discretion of the trial judge. Therefore, unless the instructions were erroneous or the trial was otherwise tainted, our review is limited to determining whether the trial judge abused his discretion. *See* Ryen v. Owens, 144 U.S.App.D.C. 332, 446 F.2d 1333 (1971); Taylor v. Washington Terminal Co., 133 U.S.App. D.C. 110, 409 F.2d 145 (1969); Bryant v. Mathis, 107 U.S.App.D.C. 339, 278 F.2d 19 (1960); Rankin v. Shayne Brothers, Inc., 98 U.S.App.D.C. 214, 234 F.2d 35 (1956). We find no legal error or abuse of discretion in the judge's conduct of this trial.

We cannot say that the award in this case was so unreasonably low that the trial judge abused his discretion by refusing to order retrial of the damage issue. While it is true that Jenell suffered a serious injury that causes her to limp, the jury could have reasonably inferred from the medical testimony that her recovery ultimately could be complete. Tr. at 107–12. Moreover, it is particularly difficult to say that an award of $2,000 is grossly inadequate where there is absolutely no proof of special damages such as loss of earnings,[6] and no showing that the injury would impair the child's future earning capacity. If we do not continue to defer to the discretion of trial judges in circumstances such as these, we will inevitably become involved in the business of placing price tags on personal injuries depending upon our view of what an injury is worth. We decline to become so entangled.

Appellant also speculates that several factors may have caused the jury to render a compromise verdict. We find no reason to explore these factors, as mere speculation will not suffice to prove that the jury reached its verdict improperly. Such jury misconduct must be proved by legally competent evidence, 6A J. Moore, Federal Practice, *supra,* at ¶ 59.08[4], which appellant has not offered.

Appellant lastly contends that the trial judge erred in failing to instruct the jury that the mother's contributory negligence, if any, in not providing proper supervision for her children could not be imputed to Jenell. This argument borders on the frivolous as the trial judge eliminated any alleged ambiguity on this point in his final admonition to the jury. Immediately before the jury retired to deliberate, the trial judge instructed that:

I repeat for you the possible verdicts in this case: (1) in favor of the defendant as to both plaintiffs; (2) in favor of both plaintiffs against the defendant; (3) in favor of the plaintiff Jenell only. Whatever your verdict may be, it must be unanimous.

I say to you by way of repetition, further that the mother may not recover unless you find in favor of the daughter. *The fact that the mother cannot recover if you find that she did not exercise proper supervision, that alone would not be a bar to the daughter's recovery. It would be applicable only to the mother.*

Tr. at 264 (emphasis added). We think that the italicized language adequately cautioned the jury that it could not impute any negligence by the mother to her daughter Jenell.

---

**6.** The only special damages proved at trial were approximately $1,600 in medical bills incurred by appellant in her individual capacity. As the jury ruled against her in her individual suit, *see* n. 2, she was unable to recover that expense.

## IV

For the reasons stated in part II of this opinion, we reverse the entry of judgment *n. o. v.* and instruct the district court to reinstate the jury verdict. For the reasons stated in part III, we affirm the denial of a new trial on the issue of damages.

So ordered.